**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-1543, 19-2645
_____

CRISOFORO MONTALVO DEJESUS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A205-017-146)
Immigration Judge:  Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 1, 2018
_____

Before:  CHAGARES, JORDAN, and MATEY, <u>Circuit</u> <u>Judges</u>

(Filed: August 13, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Crisoforo Montalvo DeJesus filed two petitions for review of orders of the Board of Immigration Appeals ("BIA"). In his first petition (No. 18-1543), DeJesus challenges a BIA order affirming an Immigration Judge's ("IJ") decision denying his applications for withholding of removal and protection under the Convention Against Torture ("CAT"). In his second petition (No. 19-2645), DeJesus challenges the BIA's denial of his motion to reopen his case and the BIA's decision not to reopen sua sponte. For the following reasons, we will deny DeJesus's first petition for review and dismiss in part and deny in part his second petition for review.

I.

We write for the parties and so recount only the facts necessary to our decision. DeJesus is a native and citizen of Mexico. He entered the United States illegally in April 2007. DeJesus is married to Orbilit Reyes-Avila, who is also a Mexican citizen and who has availed herself of protection under the Deferred Action for Childhood Arrivals program. They have two children who are both U.S. citizens by birthright.

Shortly after DeJesus entered the United States, the Zeta criminal cartel began extorting his mother and aunt, both of whom owned small fish stores. When his mother could not make the payments on time, the Zetas threatened her with violence. His mother reported the extortion to the police, but they took no action. In 2013, his mother fell behind on payments to the cartel and was forced to close her business and flee to another part of Mexico.

2

In 2012, DeJesus was convicted of unlawful possession of a machete in violation of N.J. Stat. Ann. § 2C:39-5(d). DeJesus's conviction was later vacated by the Supreme Court of New Jersey, see State v. Montalvo, 162 A.3d 270 (N.J. 2017), but while he was serving his sentence, he was transferred to Immigration and Customs Enforcement custody. On October 7, 2013, the Department of Homeland Security served him with a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present without admission or parole. The NTA provided that his removal proceedings would take place on a "date to be set" at a "time to be set." Administrative Record ("A.R.") 462.[1] On October 10, 2013, DeJesus received a follow-up "Notice of Hearing," which identified the time and place of the first hearing of his removal proceedings.

DeJesus accepted the factual allegations in the NTA at a hearing before the IJ and conceded removability. He submitted a Form I-589 application for withholding of removal and protection under the CAT that same day. DeJesus expressed his fear that the Zeta cartel "might target [him] for the same reasons that [his] mom had to run away." A.R. 112. The IJ found DeJesus credible but concluded that he did not qualify for withholding of removal or CAT protection because he did not present any evidence that his mother had been subjected to violence since closing her store and moving away or

---

[1] Citations to "A.R." refer to the administrative record in No. 18-1543. Citations to "Supp. A.R." refer to the administrative record in No. 19-2645.

any evidence that the Zetas had victimized him personally. DeJesus appealed. The BIA agreed with the IJ and dismissed. DeJesus then filed his first petition for review.

While we were considering his first petition, the Supreme Court issued its decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), holding that an NTA that fails to specify the time and place of removal proceedings is defective, and so does not trigger the so-called "stop-time rule." To be eligible for cancellation of removal, nonpermanent residents who have been deemed deportable must have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). The stop-time rule provides that "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served [with an NTA]." 8 U.S.C. § 1229b(d)(1).

Based on the Supreme Court's decision in Pereira, DeJesus filed a motion asking the BIA to reopen his case and remand to the IJ to consider an initial application for cancellation of removal that he attached to his motion. DeJesus argued that, because his NTA was defective under Pereira, neither it, nor the Notice of Hearing, triggered the stop-time rule, and, in the meantime, he had accumulated the ten years of continuous physical presence necessary to be eligible for cancellation of removal. 8 U.S.C. § 1229b(b)(1).

The BIA denied DeJesus's motion to reopen, reasoning that the motion was untimely because DeJesus filed it more than ninety days after the final order of removal. 8 C.F.R. § 1003.2(c)(2). The BIA rejected DeJesus's argument that he was entitled to

4

equitable tolling because it concluded that he was ineligible for cancellation of removal on the grounds that the October 10, 2013 Notice of Hearing cured the defective October 7, 2013 NTA and triggered the stop-time rule. The BIA also declined to sua sponte reopen DeJesus's case on the ground that he was ineligible for cancellation of removal, first, because the Notice of Hearing cured the defective NTA, and second, because DeJesus failed to show that his U.S.-citizen family members would suffer "exceptional and extremely unusual hardship" if he were removed from the country. Supp. A.R. 4 (citing 8 U.S.C. 1229b(b)(1)(D)). DeJesus then filed his second petition for review, and we consolidated it with his first petition.

On February 26, 2020, this Court published its decision in Guadalupe v. Attorney General, in which we held that, "for purposes of the stop-time rule, a deficient NTA cannot be supplemented with a subsequent notice that does not meet the requirements of 8 U.S.C. § 1229(a)(1)." 951 F.3d 161, 167 (3d Cir. 2020).

DeJesus's consolidated petitions for review present two issues: (1) whether the BIA properly concluded that DeJesus was not entitled to either withholding of removal or protection under the CAT, and (2) whether the BIA abused its discretion in denying DeJesus's motion to reopen and request to reopen sua sponte, either as a result of our holding in Guadalupe, or otherwise.

5

II.[2]

We start with DeJesus's first petition for review challenging the denial of withholding of removal and relief under the CAT. In its order, the BIA adopted the IJ's findings and discussed the bases of the IJ's decision, so we review the decisions of both the IJ and the BIA. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We review factual determinations to ensure that "they are supported by substantial evidence from the record considered as a whole," and "we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal conclusions de novo. Id.

To qualify for withholding of removal, an applicant must establish that it is "more likely than not," Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), that he will face persecution in the country of removal on account of his "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A). For relief under the CAT, an applicant must demonstrate "that it is more likely than not that he . . . would be tortured," Sevoian v. Ashcroft, 290 F.3d 166, 174–75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)), in the country of removal and that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).

---

[2] The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

Substantial evidence supports the denial of withholding of removal and relief under the CAT. DeJesus provided no evidence that the Zetas targeted him personally, much less evidence that he was persecuted on account of a protected ground. He also provided no evidence that the Zetas have subjected his mother to extortion or violence since she fled to another area of Mexico in 2013. We see no error in the BIA's determination that the Zetas threaten individuals who refuse to pay extortion fees and that DeJesus's mother was targeted by the Zetas solely for that reason. Regarding CAT protection, DeJesus cannot show that it is more than likely than not that he would be subject to torture by the Zetas for the same reasons, and he presented no evidence that Mexican authorities would consent to such torture. For the foregoing reasons, we will deny DeJesus's first petition for review.

### III.

We now turn to DeJesus's second petition for review — his petition challenging the BIA's denial of his motion to reopen and the BIA's refusal to reopen sua sponte. We review the denial of a motion to reopen for abuse of discretion and will reverse only if the denial is arbitrary, irrational, or contrary to law. Contreras v. Att'y Gen., 665 F.3d 578, 583 (3d Cir. 2012). We review questions of law de novo. Id.

### A.

An undocumented person may file a motion to reopen within ninety days of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). The period for filing a motion to reopen may be subject to equitable tolling so long as the non-citizen

7

exercised due diligence in filing his motion. Alaazir v. Att'y Gen., 639 F.3d 86, 90 (3d Cir. 2011). A motion to reopen "for the purpose of submitting an application for relief must be accompanied by the appropriate application." 8 C.F.R. § 1003.2(c)(1). The BIA may deny a motion to reopen where "the movant has failed to establish a prima facie case for the relief sought." Sevoian, 290 F.3d at 169.

DeJesus filed his motion to reopen after the ninety-day deadline. But he argues that his motion should be subject to equitable tolling because he only became eligible for cancellation of removal as a result of the Supreme Court's decision in Pereira, which was issued three months after the deadline for filing a motion to reopen expired.

We agree with DeJesus that under the rule in Pereira, DeJesus's NTA was defective, and, under our recent holding in Guadalupe, the follow-up Notice of Hearing did not cure the defect, so neither triggered the stop-time rule. Nevertheless, we agree with the BIA that DeJesus is not entitled to equitable tolling on his motion to reopen because the BIA concluded that DeJesus could not show that his "removal would cause exceptional and extremely unusual hardship" to his spouse, children, or another U.S.-citizen family member, which is necessary to be eligible for cancellation of removal. Supp. A.R. 4. (quoting 8 U.S.C § 1229b(b)(1)(D)). As a result of the BIA's hardship determination, DeJesus has failed to "establish a prima facie case for the relief" he seeks, Sevoian, 290 F.3d at 169, regardless of when the stop-time rule was triggered. And we have no jurisdiction to review the BIA's discretionary hardship determinations. See 8 U.S.C. § 1252(a)(2)(B)(i) (stripping the courts of appeals of jurisdiction over "any

8

judgment regarding the granting of [cancellation of removal]").[3]  As a result, we will deny DeJesus's second petition for review in part.

B.

The BIA may elect to <u>sua</u> <u>sponte</u> reopen any case in which it has rendered a decision.  8 C.F.R. § 1003.2(a).  We lack jurisdiction to review the BIA's decision not to exercise its <u>sua</u> <u>sponte</u> authority to reopen, unless that decision is based on an incorrect legal premise or contravenes the BIA's own rule or settled course of adjudication.  <u>See</u> <u>Sang Goo Park v. Att'y Gen.</u>, 846 F.3d 645, 651 (3d Cir. 2017).  We also lack jurisdiction to review the BIA's determination that a non-citizen has not suffered sufficient hardship to be eligible for cancellation of removal.  8 U.S.C. § 1252(a)(2)(B)(i).

Because the BIA "relied on an incorrect legal premise" — that the follow-up Notice of Hearing cured the defective NTA and triggered the stop-time rule — in rejecting "<u>sua</u> <u>sponte</u> reopening, we may exercise jurisdiction . . . . [to] remand to the BIA so it may exercise its authority against the correct 'legal background.'"  <u>Pllumi v. Att'y Gen.</u>, 642 F.3d 155, 160 (3d Cir. 2011) (quoting <u>Mahmood v. Holder</u>, 570 F.3d

---

[3]  The BIA expressly determined that DeJesus is ineligible for the underlying relief that he seeks based on insufficient hardship — an independently sufficient ground unaffected by either <u>Pereira</u> or <u>Guadalupe</u>.  We see no reason to remand this case to the BIA so that it may again reach the same conclusion specifically with respect to denying DeJesus's motion to reopen instead of his request for <u>sua</u> <u>sponte</u> reopening.  <u>Cf.</u> <u>Li Hua Yuan v. Att'y Gen.</u>, 642 F.3d 420, 427–28 (3d Cir. 2011) (holding error harmless and declining to remand to the BIA where it was "highly probable that the error did not affect the outcome of the case" and remand "would [have been] an idle and useless formality" (citation and quotation marks omitted)).

9

466, 469 (2d Cir. 2009)). However, the BIA declined to reopen <u>sua</u> <u>sponte</u> for the independent reason that DeJesus did not show that his removal would impose sufficient hardship on a qualifying family member. Such hardship determinations are committed to the BIA's unreviewable discretion. <u>See</u> <u>Patel v. Att'y Gen.</u>, 619 F.3d 230, 232 (3d Cir. 2010). As a result, like the BIA's denial of DeJesus's motion to reopen, the BIA's "error" in refusing to reopen <u>sua</u> <u>sponte</u> on the alternative ground that the follow-up Notice of Hearing cured the defective NTA and triggered the stop-time rule "did not affect the outcome of the case," and so does "not necessitate[e] a remand." <u>See</u> <u>Li Hua Yuan</u>, 642 F.3d at 427. As a result, we will dismiss DeJesus's second petition for review in part.

IV.

For the foregoing reasons, we will deny DeJesus's first petition for review and deny in part and dismiss in part his second petition for review.